UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

TERRENCE L. CHARLTON,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:24-CV-310 JD

**OPINION AND ORDER**

    Plaintiff Terrence Charlton applied for supplemental security income disability benefits under Title XVI of the Social Security Act, alleging that he became disabled in April 2022. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. Charlton was not disabled. The Appeals Council later denied his request for review, and Mr. Charlton now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

    Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

B.  **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine

whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C. The ALJ's Decision

Mr. Charlton filed a Title XVI application for supplemental security income disability benefits alleging disability beginning in April 2022. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on September 19, 2023.

At the hearing, Mr. Charlton testified that he is 46 years old and has a ninth-grade education. He has a history of physical injuries, including being shot and stabbed, which, according to him impact his ability to perform physical tasks. Mr. Charlton said he experiences back pain, shortness of breath, and weekly migraines, and he takes Zoloft for depression. Despite these challenges, he recently started a part-time job due to child support obligations. He struggles with reading, writing, and following directions.

A vocational expert ("VE"), Dr. Robert Barkhaus, testified next. The ALJ presented a hypothetical individual with the same residual functional capacity ultimately assigned to Mr. Charlton and asked whether such an individual could perform Mr. Charlton's past relevant work. The VE responded that the individual could not. However, the VE testified that the hypothetical individual could perform other jobs available in the national economy: marker in retail (DOT #209.587-034; 101,000 jobs nationally), bakery conveyor worker (DOT #524.687-022; 18,000 jobs nationally), and folder in a laundry (DOT #369.687-018; 20,000 jobs nationally). (R. at 31, 66.)

After the ALJ concluded his questioning of the vocational expert, Mr. Charlton's attorney asked several additional questions. Two of the questions focused on the VE's methodology for determining the number of jobs available in the national economy for the hypothetical individual:

> Q. All right. And what methodology do you use to get some of your labor statistic numbers to the national numbers for job classifications?

>   A. Yeah, I use SkillTRAN.
>
>   Q. And do you know—does SkillTRAN use equal distribution?
>
>   A. As far as how I do it, I put in the job code and then it pops up with the number, and then you indicate the industries where you believe that it's most likely that those jobs exist, and that gives you a number of estimated jobs. But as far as the formulation on how they do it, that I cannot tell you. I don't know their formulation.

(R. at 68–69.)

> At this point, Mr. Charlton's attorney objected to the VE's methodology:
>
> ATTY: Okay. Thank you, Dr. Barkhaus. Your Honor, I would object to the national numbers testified to, it would be on the basis that they're unreliable in the results with the unreliable methodology, and that's all.

(R. at 69.) The attorney said nothing further and asked no other questions. The ALJ had no follow-up questions either and instead concluded the hearing.

On October 19, 2023, the ALJ issued a decision finding that Mr. Charlton was not disabled. (R. at 31.) In doing so, the ALJ employed the customary five-step analysis. At step two, the ALJ determined that Mr. Charlton suffered from the following severe impairments:

> remote history of a 1997 gunshot wound to the left forearm requiring reconstructive surgery on the left forearm with chronic left wrist pain; ganglion cyst of the right hand/wrist requiring excision surgery in December 2022; chronic low back pain in the L1-L2 spinal processes; smoking history with post COVID breathing issues; migraine headaches; mild to moderate obesity; anxiety and depression disorder; and history of learning disorder.

(R. at 19 (citations to the record omitted).)

At step three, the ALJ determined that Mr. Charlton "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (R. at 22.) Before proceeding to step four, the ALJ assessed Mr. Charlton's residual

5

functional capacity ("RFC") [1] and found that he is capable of performing a reduced range of light work,[2] subject to various physical and mental limitations. (R. at 24.) At step four, consistent with the VE's testimony, the ALJ determined that Mr. Charlton "was unable to perform any past relevant work." (R. at 30.)

Finally, at step five—again relying on the testimony of the VE—the ALJ concluded that "[c]onsidering [Mr. Charlton's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Charlton] can perform." (R. at 30.) In his decision, the ALJ overruled Mr. Charlton's attorney's objection to the VE's methodology for estimating national job numbers:

> The claimant's representative objected to these job numbers on the ground that the vocational expert's methodology by way [of] use of Skill Tran for determining numbers of jobs is not reliable. The undersigned overrules this objection. The vocational expert has professional knowledge and experience in job placement, the jobs are based upon the DOT and SCO and the expert confirmed that the jobs cited are consistent with the DOT and SCO and the representative did not object to expert's qualifications to testify. Accordingly, the vocational expert's job information is found to be reliable.

(R. at 31.)

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

**D. Discussion**

In his appeal, Mr. Charlton's main argument is that the ALJ's step five finding is not supported by substantial evidence because it's based on the VE's unreliable testimony. He contends that the ALJ failed to assess the reliability of the VE's job-number estimates, despite his attorney's objection during the hearing. Mr. Charlton asserts that the VE's methodology—based on the SkillTRAN software—is neither generally accepted nor inherently reliable, and the ALJ did not elicit testimony or provide any evidence to establish its validity.

At step five, an ALJ has the burden to show with substantial evidence the jobs that a claimant can do exist in significant numbers. *See Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). In this task,

> ALJs commonly rely on vocational experts to provide "an impartial assessment" of the (1) types of occupations in which claimants can work and (2) availability of positions in such occupations. Vocational experts are experienced in job placement and typically hold advanced degrees in vocational rehabilitation or psychology. To make their assessment, vocational experts may rely on a variety of sources and tools, as well as their knowledge of the job market, experience placing individuals in jobs, and surveys of employers.

*Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (citations and quotation marks omitted).

An ALJ must ensure that the VE's jobs estimate is the product of a reliable method, and that the VE gave enough detail for the Court to understand the sources of his data and the general process he adopted:

> When an ALJ bases a decision on the testimony of a vocational expert, the substantial evidence standard requires the ALJ to ensure that the vocational expert's job number estimate is the product of a reliable method. A precise count is not necessary, but the vocational expert's testimony must be supported with evidence sufficient to provide some modicum of confidence in its reliability. All the substantial evidence standard requires is that a vocational expert gave enough detail for the Court to understand the sources of his data and the general process he adopted.

*Id.* at 1022. The ALJ's duty to ascertain that the VE's numbers are not made out of whole cloth is particularly true when the claimant's attorney objects to the VE's testimony. *See Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018) ("Before accepting a VE's job-number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation.").[3]

"This case-by-case inquiry considers all features of the vocational expert's testimony to determine whether the testimony establishes more than a mere scintilla of evidence supporting the ALJ's conclusion. . . . But a critical aspect of the vocational expert's job estimation process is how that expert matches general economic data reported in SOC codes to specific DOT numbers used by the agency." *Id*. (citations, quotation marks, and brackets omitted). "The database does not list the number of jobs associated with each job title, so the vocational expert must perform an estimate. Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important. The Social Security Administration has itself acknowledged this issue and expressed an intent to update the database, but the new version has not yet arrived." *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

If a claimant believes that the VE's testimony contradicts the law, he must object at the time of the hearing. *See Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("But she forfeited this argument by failing to object to the VE's testimony during the hearing."). "[A] claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection. The

---

[3] In this order, there are two *Chavez* opinions cited. To allow for easier differentiation, the Court cites them in full each time.

claimant's objections, we emphasized, must also be specific enough to indicate that [the claimant] believed the methodology was unreliable. General objections or vague questions about the VE's methodology are, without more, insufficient." *Leisgang v. Kijakazi*, 72 F.4th 216, 219–20 (7th Cir. 2023) (citations and quotation marks omitted). The Court of Appeals for the Seventh Circuit is quick to emphasize that these forfeiture rules "did not displace the ALJ's duty to hold the VE to account for the reliability of his job-numbers estimates . . . or the general rule that a claimant cannot waive the substantial evidence standard," and did not shift the burden of proof away from the agency. *Id*. at 220.

As a preliminary matter, while the Court takes no position on the merits of the issue, it notes that the Commissioner has not argued that Mr. Charlton's attorney's objection to the VE's methodology at the hearing was insufficient to preserve the issue for appeal. To the extent that such a waiver argument could have been made, it is itself waived, and the Court need not address it. *See Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 n.30 (7th Cir. 2022) (defendant "does not raise the waiver issue in her appeal brief, and a waiver argument can be waived"); *Nolen v. Sullivan*, 939 F.2d 516, 518-19 (7th Cir. 1991) (finding in social security disability case that the government "waived the waiver issue").

The Court now turns to whether the ALJ's finding about job numbers is supported by substantial evidence. In response to Mr. Charlton's attorney's brief questioning, the VE testified that he used SkillTRAN to estimate national job numbers but admitted he was unfamiliar with the underlying methodology used by the software to generate those estimates. Following this, Mr. Charlton's attorney objected to the reliability of the VE's job-number testimony, arguing it was based on an unreliable and unexplained methodology. Given that the VE stated only that he used SkillTRAN to get a jobs numbers estimate and offered a rudimentary explanation of how

9

the software generates such estimates, this exchange should have alerted the ALJ that further clarification was needed for the VE's job-numbers conclusions. Instead, the ALJ ended the hearing.

To be sure, "[t]he inability of the vocational expert to precisely explain the software's algorithms does not render his explanation unreliable." *Case v. Kijakazi*, No. 22-2379, 2023 WL 4882880, at *3 (7th Cir. Aug. 1, 2023) (citing *Fetting v. Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023) (vocational expert not required to use a market study, computer program, or publication to make his calculations)). Instead, the VE's failure lies in the fact that, based on the record, he had no independent basis for his job-number estimates beyond the SkillTRAN software. *See Case*, No. 22-2379, 2023 WL 4882880, at *3 (vocational expert must provide more than vague references to software) (citing *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020) ("Testimony that incants unelaborated words and phrases such as 'weighting' and 'allocation' and 'my information that I have' cannot possibly satisfy the substantial-evidence standard.")). According to the hearing transcript, the VE relied solely on SkillTRAN in arriving at his jobs estimates without any reference to his professional experience or any other information to back up, even minimally, his overall conclusion. Here, such reliance, without more, fell short of the substantial evidence standard. *See Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022) (the VE must explain the methodology "cogently and thoroughly" and the explanation must be sufficient to instill some confidence that the estimate was not "conjured out of whole cloth."). Therefore, faced with the objection, the ALJ should have drawn out from the VE additional basis supporting his findings.

Consider *Fetting* where, in addition to relying on SkillTRAN, the VE supported "his approximation by 'drawing on knowledge of labor market conditions and occupational trends,

gleaned from . . . placing workers in jobs.'" 62 F.4th at 340. Likewise, in *Case*, the VE "further explained that he relied on his four decades of research and job counseling experience, as well as his personal observations. He testified that the estimates the software produced seemed reasonable in light of his four decades' experience observing these job categories." No. 22-2379, 2023 WL 4882880, at *2. Under those circumstances, "[t]he ALJ was entitled to conclude that both the expert's use of the software and his prior research and professional experience produced sufficiently reliable estimates." *Id*. at *3; *see also Daniel L. v. Dudek*, No. 24 C 9328, 2025 WL 1134217, at *10 (N.D. Ill. Apr. 16, 2025) ("[T]he VE explained that, based on his experience, he knew there were cafeteria workers, cashiers, and packers in the economy. He gained such experience over the course of a long career by assisting individuals with a wide variety of physical and/or mental limitations and placing them in positions and speaking with potential employers." (citations to the record omitted)). None of this happened here.

At most, the ALJ provided his resume but did not explain how his experience informed his decision-making. *See Rennaker v. Saul*, 820 F. App'x 474, 479 (7th Cir. 2020) ("Although the VE pointed to his own education, research, training, and experience in job placement and vocational rehabilitation to explain the kind of work [the plaintiff] could perform, the VE did not explicitly tie this background to his estimate of nationwide job numbers. In other words, although a VE may draw from his expertise to provide a reasoned basis for his job-number estimates, the VE in this case did not bring any aspect of his experience to bear on the reliability of those numbers. He did not say why he thought his numbers were reliable.") (citation omitted); *cf. with Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023) ("A VE who, as here, provides a reasoned explanation based on hands-on experience working in the field, market surveys, or conversations with employers, can establish sufficient confidence in his job-number estimates

11

even though the claimant may not be able to exactly duplicate them"). Nor did the VE indicate whether he had knowledge of national or local job markets, or any practical, and relevant, experience from assisting people with locating jobs. "The absence of any such testimony left the ALJ without any reasoned and principled basis for accepting the job-number estimates." *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018). On this record, the VE's testimony lacks the support of substantial evidence.

While the ALJ noted the VE's "professional knowledge and experience in job placement" in overruling Mr. Charlton's objection to the VE's methodology (R. at 31), he did not explain how that knowledge and experience informed the VE's estimates; nor could he. After all, Mr. Charlton's objection was, and remains, to the methodology not the VE's qualifications. Moreover, the ALJ did not tie these qualifications to the VE's job-number estimates. Instead, in his ruling, he relied on them to credit the VE's testimony that the three jobs he identified were consistent with the descriptions in the DOT and SCO. (*See id.* (". . . and the [VE] confirmed that the jobs cited are consistent with the DOT and SCO . . . .").) But Mr. Charlton's objection targeted the VE's estimate of the number of jobs existing in the national economy that he could perform, not the existence of those jobs in the DOT or SCO, meaning the ALJ's ruling does not address the substance of the objection.

In arguing that the VE's opinion is substantial evidence for the ALJ's decision that Mr. Charlton is not disabled, the Commissioner keeps pointing out that SkillTRAN is a widely used software by the VEs and that it is well-accepted in the field. (Def.'s Br., DE 23 at 5–6.)

> This argument conflates whether SkillTRAN is an accepted source with whether the VE's methodology of relying (exclusively) on estimates generated from that source in a particular case was reliable. The Commissioner's cited cases acknowledge that while SkillTRAN may be an acceptable source, it might not be a reliable methodology for a VE to rely solely on SkillTRAN estimates without some further analysis based on the expert's experience, expertise, or comparison with

12

other sources. In other words, "the mere fact that SkillTRAN was used is not itself substantial evidence of reliability." *Eidenier v. Kijakazi*, 2022 U.S. Dist. LEXIS 10091, 2022 WL 179060, at *8 (N.D. Ind. Jan. 19, 2022); *Wilcox* [*v. Comm'r of Soc. Sec.*, No. 1:22-cv-00187-SLC, 2023 U.S. Dist. LEXIS 175287, at *2 (N.D. Ind. Sep. 29, 2023)]; *Jonathan W.* [*v. Kijakazi*, 2023 U.S. Dist. LEXIS 157273, No. 3:22-cv-50388, 2023 U.S. Dist. LEXIS 157273, at *3–6 ("But other than stating that she understood how SkillTRAN works and that she found it reliable, the VE offered no insight into how she utilized SkillTRAN, and the other sources she relied on, to calculate her job numbers.").

*Agnieszka P. v. O'Malley*, 2024 U.S. Dist. LEXIS 15132, No. 21 CV 1433, 2024 U.S. Dist. LEXIS 15132, at *17–18 (N.D. Ill. Jan. 29, 2024). It is also curious that, in defense of the ALJ, the Commissioner cites the training materials of SkillTRAN entitled "*Defending Your Use of Job Browser Pro Methodology.*" (Def.'s Br., DE 23 at 4 n.5 (citing https://innd-ecf.sso.dcn/cgi-bin/login.pl).) There's no indication that the articles to which the Commissioner refers were part of the record or that the VE otherwise reviewed them, so the Court cannot rely on them in this appeal. *See Wright v. Barnhart*, 2005 U.S. Dist. LEXIS 15452, No. 4:04-CV-0215-DFH-WGH, 2005 U.S. Dist. LEXIS 15452, at *15 (S.D. Ind. July 25, 2005) ("The court may consider only the evidence that was before the ALJ at the time of his decision." (citing *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994)).

Accordingly, the Court remands this case to allow the VE "to expand on [his] testimony or make some other showing that significant jobs exist for [Mr. Charlton]. [Mr. Charlton] in turn will have the opportunity to challenge any such showing." *Ruenger*, 23 F.4th at 764. And because remand is required, the Court need not address Mr. Charlton's other arguments, which his attorney can bring up with the ALJ.[4]

---

[4] One such argument concerns an apparent conflict between the VE's job testimony and Mr. Charlton's RFC, specifically with respect to the position of bakery conveyor worker, which involves assembly-line pace work that Mr. Charlton is restricted from performing. The Commissioner appears to concede this point as to that position alone (see Def.'s Br., DE 23 at 10). In any event, if this issue remains relevant, it should be addressed and resolved by the ALJ on remand.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 10, 2025

/s/ JON E. DEGUILIO
Judge
United States District Court
